Filed 3/9/21  Oak View Little League, Inc. v. Ojai Valley Baseball League CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| OAK VIEW LITTLE LEAGUE, INC., | B306353 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 56-2020-00540894-CU-BT-VTA) |
| v. | |
| OJAI VALLEY BASEBALL LEAGUE et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Matthew P. Guasco, Judge.  Reversed.

Pettit Kohn Ingrassia & Lutz & Dolin, Andrew I. Chung, Mihret Getabicha, for Defendants and Appellants.

Trusted Legal, Naomi Dewey, for Plaintiff and Respondent.

_____

**INTRODUCTION**

The trial court granted a preliminary injunction directing defendants and appellants Ojai Valley Baseball League, Ryan Braget, and Adriana Winters (defendants) to relinquish the assets of plaintiff and respondent Oak View Little League (plaintiff) back to plaintiff. Because the individuals purporting to be plaintiff's board of directors lacked legal authority over plaintiff, we reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Youth baseball in Ojai Valley**

Oak View is a town about five miles south of Ojai Valley. Oak View Little League (plaintiff, the local league,

or the league)[1] is a California nonprofit corporation[2] that has been affiliated with a national organization, Little League Baseball, Inc. (Little League), since the early 1960s. This case involves a dispute between two different groups of parents, both of whom purport to be acting on behalf of the local league.

The local league adopted a constitution in 2004, which serves as its by-laws and governing document. Under the constitution, the board of directors is responsible for the

---

[1] While the local league has always been a single corporate entity, it has been known at different times as Oak View Little League, Ojai Valley Little League, and Ojai Valley Baseball League. During the course of events pertinent to this opinion, the Secretary of State received several name change forms, changing the name of the corporation first from Oak View Little League to Ojai Valley Baseball League, then back to Oak View Little League, and then back to Ojai Valley Baseball League.

[2] "Under the Nonprofit Corporation Law (Corp. Code, § 5000 et seq.) there are three principal types of nonprofit corporations: a public benefit corporation (Corp. Code, §§ 5110–6910), a mutual benefit corporation (Corp. Code, §§ 7110–8910), and a religious corporation (Corp. Code, §§ 9110–9690)." (*Gantman v. United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1566, fn. 4.) Nothing in the record clarifies whether the local league is a public benefit or mutual benefit corporation, but none of the distinctions in the statutes applicable to those two types of nonprofit corporations affects our analysis here.

management of the property and affairs of the local league. (2004 Const., Art. VI, § 1.) Different articles of the constitution address topics like membership, meetings, electing directors, affiliation with Little League, and finances. The constitution reflects the close affiliation with Little League, providing: "The Local League shall devote its entire energies to the activities authorized by such charter and it shall not be affiliated with any other program or organization or operate any other program." (2004 Const., Art. X, § 1.) Little League's rules and regulations are binding on the local league, and any local rules or by-laws adopted by the board of directors cannot conflict with Little League's rules or the constitution. (2004 Const., Art. X, §§ 2, 3.) While the constitution can be amended by a majority vote at a noticed meeting, all proposed amendments must be submitted to Little League for approval before implementation. (2004 Const., Art. XII.)

The constitution requires the local league to apply for a Little League charter annually, and to do all things necessary to maintain the charter. (2004 Const., Art. X, § 1.) The 2019 charter agreement between the local league and Little League (2019 charter) covers a wide variety of topics, including data privacy, a non-discrimination clause, and an agreement to pay an annual affiliation fee. The two most relevant provisions concern ownership of funds and property and dispute resolution. Under the charter agreement, the local league agrees that "Little League is the sole and exclusive owner of all funds, property and

4

trademarks acquired by [the] organization at any time in the name of Little League and that all of these funds and property shall be devoted solely and exclusively to Little League's purposes." If any dispute arises in connection with the charter, the local league agrees to accept the decision of the Charter Committee as final and binding, although the local league may seek reconsideration and personally present their position at a meeting with the Charter Committee.

On October 17, 2019, the local league membership elected nine individuals[3] to serve on the Board of Directors. In December 2019, Little League purported to appoint a new eleven-member interim board[4] for the local league, after a dispute arose concerning whether the local league should affiliate with a youth baseball program other than

---

[3] The nine individuals are Paul Barnard, Gina Braget, Ryan Braget, Wade Bentivolio, Adam Dutter, Jordan Larson, Leah Larson, Greg Miller, and Adriana Winters. Ryan Braget and Adriana Winters are named as individual defendants in this case.

[4] Little League appointed the following individuals: Nicole Kennedy (League President), Laura Loes (League Player Agent), Brian Aikens (League Treasurer), Tom Marcus (League Baseball Vice President), Justine Cleak (League Officer), Gary Culver (League Officer), Barbara Kennedy (League Safety Officer), Delaney Loes (League Secretary), Karisa Melendez (League Officer), Jeff Mendoza (League Umpire-in-Chief), and Mark Vanderwyk (League Officer).

Little League.  For the sake of clarity, we will refer to the board elected on October 17, 2019 as Board A, and to the interim board appointed by Little League in December 2019 as Board B.

## B. The local league proposes changes

In the fall of 2019, before Board A was elected, certain members of the prior board, including defendants Ryan Braget and Adriana Winters, proposed various changes to the local league's structure and constitution, including changing the league's name to Ojai Valley Baseball League, and potentially changing the local league's affiliation from Little League to PONY Baseball, Inc. (PONY League).  On November 13, 2019, Board A sought membership approval to amend the local league's constitution, change the league's name, and whether to charter with Little League or PONY League.  According to one board member's declaration, the local league's membership voted to approve the proposed changes, including to affiliate with PONY League.

At some point, the names on the league's bank accounts were changed to Ojai Valley Baseball League, and some of the league's other assets, such as its social media accounts, a post office box, and equipment, were being used by a group purporting to operate the local league as Ojai Valley Baseball League.

## C. Little League responds

On November 18, 2019, Little League's West Region Director sent an e-mail to Board A, acknowledging that the board and community members had expressed interest in affiliating with a competing organization. The e-mail reminded the directors that upon dissolution of the local league, any property remaining after debts and claims were satisfied must be transferred to an "entity which maintains the same objectives as set forth" in the league constitution, pointing specifically to Article II, which states "the Local League will provide a supervised program under the Rules and Regulations of Little [L]eague Baseball, Incorporated."

While the precise timing and mechanism is unclear from the record, at some point "Little League found that [Board A] violated their fiduciary duties under the operative Little League Charter." Daniel Velte, Little League's Senior Director of League Development and Affiliation, explained in a declaration that (1) any changes to the 2004 constitution required approval from Little League; (2) the local league's board of directors had authority to adopt further bylaws, so long as the bylaws did not conflict with Little League's rules or the constitution; (3) it was his understanding that the local league did not adopt any further bylaws; (4) under both the constitution and the 2019 Little League charter agreement, local league funds could only be used for Little League activities; (5) dissolving or renaming the local league was not permitted

7

under the 2019 charter, but required advance notice to league members and a vote at a general or special membership meeting.

On December 4, 2019, Velte sent a letter to Board A, notifying Board A that use of local league assets for activities not affiliated with Little League was impermissible. The letter identified league assets as including member and donor lists, equipment, facility and gate keys, bank accounts, websites and social media accounts, and property acquisition documents. The letter stated: "[Board A] is without power to dissolve or otherwise disband [the local league] and any such attempt must be put to a vote of the Members at a General (or Special) Membership Meeting. Such a meeting requires advance notice, which you did not provide. The Board and its Officers cannot vote to remove the assets of the entity (and Members) to which they owe a fiduciary duty and move those assets to a new entity. You cannot simply state that 'Ojai Valley Little Leagues have become Ojai Valley Baseball League' and it is so. The Members must vote on such an action." The letter purported to quote from Little League's Operating Manual,[5] regarding conflicts of interest,

_____

[5] While the December 4, 2019 and January 10, 2020 letters purport to quote from "Little League's Operating Manual," the manual itself, or photocopies of the relevant pages, were not included in the trial court's record. The excerpts of the Little League Rulebook that are part of the

and advising Board A that any board member violating Little League's policies was subject to "disciplinary action including but not restricted to removal or suspension, for any act, conduct or involvement contrary to the Rules, Regulations and Policies of the Corporation . . . ." The letter concluded by directing Board A to "cease and desist in your use of Little League assets . . . for any purpose other than for the direct benefit of the Little League program." An identical letter was also sent on January 10, 2020. There is no evidence in the record that Board A ever responded to either letter.

Little League approved an interim board of directors for the local league in December 2019, and at the time of the hearing on the preliminary injunction Little League recognized Board B as the local league's board. However, the members of Board B were unable to move forward with league activities because the names of the entity controlling the local league's assets, such as the league's bank accounts and post office box had already been changed to Ojai Valley Baseball League.

### D. Lawsuit and Preliminary Injunction

On March 12, 2020, plaintiff—the local league under the direction of Board B—filed an ex parte application for a

---

record do not contain any language giving Little League authority to remove or replace any members of a local league's board of directors.

temporary restraining order (TRO) against three defendants: (1) Ojai Valley Baseball League, identified as an unknown entity, but presumably under the direction of Board A; (2) Ryan Braget; and (3) Adriana Winters. Plaintiff's complaint alleged that defendants had improperly converted the local league's assets by amending the Constitution, changing the name, and continuing to use the league's bank accounts, taxpayer identification number (tax ID), non-profit status, and other assets. The trial court partially granted the requested TRO, freezing the league's bank accounts.

Defendants opposed issuance of a preliminary injunction, arguing that there was no probability of success on the merits because Board B lacked standing to bring suit, and they could not prevail on their claims of breach of fiduciary duty, interference with contract, and conversion.

On April 16, 2020, the court extended the TRO to restrain defendants from engaging in 13 enumerated activities, including using the local league's tax ID, bank accounts, fields, equipment, post office box, website, or social media accounts. The TRO prohibited defendants from representing that they were the successors in interest to plaintiff's rights and duties, or that plaintiff's assets had been transferred to defendants; it also restrained defendants from filing with the California Secretary of State or any governmental agency any document representing that defendants have authority to act on behalf of plaintiff.

10

On May 14, 2020, the court held a hearing on plaintiff's preliminary injunction request.  Plaintiff's attorney acknowledged that there was nothing in the local league charter or constitution that gave Little League express authority to appoint an interim board, but argued that Little League had implicit authority to do so, based on the Little League Baseball Rule Book, the local constitution and charter.

Relying on the declarations and documents submitted by the parties, the trial court granted a preliminary injunction, directing defendants to relinquish the local league's assets to plaintiff.  The trial court reasoned that the lawsuit was not a derivative action, but one brought by the local league, because Little League "had the legal authority to appoint [Board B] the interim board which authorized this action, thus conferring standing on [the local league] to bring this action."  The trial court found that plaintiff had shown it would suffer irreparable harm if defendants' actions (operating the local league using plaintiff's tax ID, bank accounts, etc.) were not enjoined pending trial.

Defendants filed a notice of appeal on June 15, 2020.

## DISCUSSION

### A. Standard of review

Before issuing a preliminary injunction, a trial court must "'evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction. [Citations.]' [Citation.]" (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280.) "[T]o the extent that the determination on the likelihood of a party's success rests on an issue of pure law not presenting factual issues to be resolved at trial, we review the determination de novo. [Citation.]" (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1403; see also *Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 925.)

### B. Standing/Likelihood of prevailing

Defendants contend that plaintiff cannot establish a likelihood of success on the merits, first because Board B lacks standing to sue, and second because Board B did not meet the requirements for a derivative action. Plaintiff contends that because defendants had violated the local league's constitution and charter, Little League had authority to remove Board A and fill the resulting vacancies

with Board B.  Plaintiff further contends that because the corporation—not Board B as individuals—has filed suit, it is not necessary to meet the requirements for a derivative action.[6]

The question before us is neither whether Board B has standing nor whether Board B met the requirements for a derivative action.  Rather, the question is whether Board B—the board that directed plaintiff to file this lawsuit—had any authority to control the league's actions, including the decision to sue defendants.  (Corp. Code, §§ 5210 [a corporation's activities and affairs are to be conducted under the direction of the board], 7210 [same].)[7]  If Board B lacked

---

[6] The reason a corporation is named a nominal defendant in a derivative action is its refusal to join the action as a plaintiff.  (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1004.)  "An action is deemed derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'"  [Citation.]  When a derivative action is successful, the corporation is the only party that benefits from any recovery; the shareholders derive no benefit "'except the indirect benefit resulting from a realization upon the corporation's assets.'"  [Citation.]"  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108, fn. omitted.)

[7] All further statutory references are to the Corporations Code unless otherwise indicated.

13

such authority, plaintiff's suit was unauthorized and it cannot proceed as a matter of law.

This case presents a scenario where two different boards of directors each contend they have the authority to act for the local league. Given that there is no dispute that Board A was duly elected and their terms of office had not expired at the time Board B sought a preliminary injunction, Board B can only have corporate authority if Board A was legally removed and Board B was legally seated. As we explain below, neither of these requirements were met in the case before us, and therefore the trial court erred in finding that plaintiff could prevail on its claims against defendants.

The named plaintiff—the nonprofit corporation Oak View Little League—is the correct party to pursue claims against officers, directors, or third parties that have harmed the organization. (*Paclink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 965 [a corporation may bring an action against its officers or directors, as an alternative to a derivative suit].) A corporation's board of directors has "authority to commence, defend, and control actions on behalf of the corporation." (*Grosset v. Wenaas*, *supra*, 42 Cal.4th at p. 1108.) While the lawsuit could also be commenced as a derivative action, the current lawsuit does not purport to comply with the statutory requirements for bringing a derivative action, nor does plaintiff argue that it is a derivative action. (§§ 5420, 5710, 7420, 7710; 1 Advising Cal. Nonprofit Corporations (Cont.Ed.Bar 3d ed. 2020) § 9.122.)

14

A director may only be removed from office before expiration of the director's term as expressly provided in the Corporations Code or the corporation's by-laws. (1 Advising Cal. Nonprofit Corporations (Cont.Ed.Bar 3d ed. 2020) § 9.47 et seq.) A director may be removed with or without cause by a majority vote of the membership. (§§ 5222, 7222.) Under certain circumstances demonstrating "cause," a director may be removed by a vote of the other directors. (§§ 5221, 7221.) Malfeasance and breach of fiduciary duty are not on the list of actions constituting cause for removal by directors; however, a director may be removed from office by court action, where the superior court finds the director guilty of fraudulent or dishonest acts or of gross abuse of authority or discretion with reference to the corporation. (§§ 5223, subd. (a), 7223, subd. (a).) The Attorney General may initiate or intervene in an action initiated by another party. (§§ 5223, subd. (b), 7223, subd. (c).) The Corporations Code specifies the minimum number of members required to initiate such a court action, if it is not initiated by a director or the attorney General. (§§ 5223, subd. (b) [the lesser of 20 members or twice the number of members authorized under section 5036], 7223, subd. (c) [20 members].)

Corporations Code sections 5220 and 7220 contain provisions regarding the terms of office, election, designation, and selection of directors of nonprofit corporations. Unless the bylaws specify otherwise, a director's term of office is for one year. (§§ 5220, subd. (a), 7220, subd. (a).) Directors may only be selected by

designation if the articles of incorporation or bylaws specify a person or entity with the power to designate a director. (§§ 5220, subd. (d), 7220, subd. (d).) According to the league constitution, directors are selected by a vote of the membership. (2004 Const., Art. V, § 6, subd. (b), Art. VI, § 2; see also § 5056, subd. (a).) The local league holds an annual meeting at which the members decide the number of directors to be elected—not less than six—and elects that number of directors. (2004 Const., Art. V, § 6, subd. (b).) A vacancy may be filled by a majority vote of the remaining directors. (2004 Const., Art. VI, § 3.) Nothing in the league constitution gives Little League authority to designate a director.

The gravamen of plaintiff's complaint against defendants is that defendants diverted local league assets, violating the league's constitution and the 2019 charter. Even assuming those allegations were adequate for a court action to remove the offending board members, the prerequisites for such an action were not met because the case was not initiated by the Attorney General, validly elected board member, or the minimum number of required members.[8] (§§ 5223, 7223; 1 Advising Cal. Nonprofit Corporations (Cont.Ed.Bar 3d ed. 2020) § 9.53.) Logically,

_____

[8] Plaintiff has not argued that the case was filed by the members of Board B as individuals, and so we need not determine whether the minimum number of members, as set forth in section 5223, subdivision (a), or section 7223 (b), was met.

16

then, if Board A was not legally removed, Board B lacks authority to direct the league's actions.

The only analogous case we have been able to find involves disputes over church governance. (See, e.g., *Classis of Central California v. Miraloma Community Church* (2009) 177 Cal.App.4th 750, 763–768 (*Classis*).) Applying neutral principles of law, if the governing documents of a hierarchical religious organization give a superior religious body authority to remove and replace members of a subordinate church's board of directors, the Corporations Code does not prevent it from doing so. (*Ibid*.) There is evidence in the record here to support the conclusion that Little League operates as a hierarchical organization, with Little League at the top of the hierarchy, districts at the intermediate level, and local leagues operating as subordinate entities akin to a local church in a hierarchical religious organization. But, in contrast to the governing documents in *Classis*, the governing documents appearing in the record of this case—namely the league constitution, the 2019 charter, and four pages of the Baseball Rulebook—do not include a grant of authority to Little League to remove and replace a board of directors of a local league when the directors take action in violation of the charter.[9]

---

[9] We also note that in *Classis*, the case was filed by the intermediate organization—the Classis—in the church hierarchy. Because neither Little League, nor individual members of the local league, filed this case as a plaintiff, we

The trial court erred when it determined that Little League had legal authority to remove Board A and appoint Board B. Nothing in the local league's constitution or the Corporations Code gives Little League authority to remove directors before the end of their term of office. Even if Little League had authority to remove or suspend a board member, there is nothing in the by-laws or the Corporations Code empowering it to appoint an interim board. Because the governing board of directors did not direct the filing of plaintiff's lawsuit, plaintiff cannot demonstrate a probability of success, and so it was error for the court to issue the preliminary injunction.

In reaching this conclusion, we make no determination of whether Board A's actions violated the local league's constitution or the 2019 charter, or whether members of Board A breached their fiduciary duty. Instead, our decision to reverse the preliminary injunction rests solely on the fact that at the time of the filing of the lawsuit, Board A had not been removed, and nothing in the Corporations Code, the constitution, or the 2019 charter authorized Little League to appoint Board B. Therefore, Board B lacked authority to initiate this lawsuit, or indeed to act in any other respect, on behalf of the local league.

---

do not address whether they would, as plaintiffs, have standing to seek to remove and replace board members through litigation.

# DISPOSITION

The preliminary injunction is reversed.  Each party to bear their own costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.